ORIGINAL



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 21 2012

CLERK, U.S. DISTRICT COURT
By _____
Deputy

1
2  Robert V. McLennan
   901 Canyon Ridge Dr.
3  Desoto, TX. 75115
   (972) 223-8105
4  rvmack@hotmail.com
   Pro Se

5

# IN THE UNITED STATES DISTRICT COURT NORTHERN

6

## DISTRICT OF TEXAS

7

8

| Robert V. McLennan, | 3-12 CV - 5 3 1 - G |
| Plaintiff, | Case No |
| v. | **COMPLAINT** |
| Oncor Electric Delivery Company LLC; KKR & Company L. P., Kerri Veitch and John Doe Veitch, in her official and individual capacity; Larry Garrett and Jane Doe Garrett in his official and individual capacity; Larry Davis and Jane Doe Davis, in his official and individual capacity; Randle Efflandt and Jane Doe Efflandlt in his official and individual capacity; Reggie Bonner and Jane Doe Bonner, in his official and individual capacity; Kelly McNair and Jane Doe McNair, in his official and individual capacity; and John and Jane Does I—X, in their official and individual capacities; | **(JURY DEMAND)** |
| Defendants. | |

1

This action is for violations of Title VII of the Civil Rights Act of 1964, as Amended, (42 U.S.C. 2000, et. seq.) (Hereinafter referred as "Title VII"), Americans with Disabilities Act of 1990, as amended, (42 U.S.C. §§ 12101 & 1213) (hereinafter referred as "ADA"); § 1981 and § 1331.

## I. <u>JURISDICTION AND VENUE</u>

1.      This court has jurisdiction pursuant to 42 U.S.C. § 1981 and 28 U.S .C. § 1331.

2.      Venue is proper in this court because all events giving rise to this action occurred in the State of Texas.

## II. <u>PARTIES</u>

3.      Robert V. McLennan ("Plaintiff" or "McLennan") is and was at all times relevant, an African-American adult male, citizen of the United States and resident of Desoto, Dallas County, State of Texas. Since 1974, Plaintiff worked at Texas Power & Light (TP&L), Texas Utilities Electric Utilities (TUE), Texas Utilities (TU) and Oncor Electric Delivery Company LLC. Since 1993, Plaintiff had worked with infrared inspections of distribution & transmission substation lines and equipment and also contracted his services to customers. During his 35 years of employment he considered himself to be well trained, safety conscious; plus he has trained many co-workers.

4.      Defendant, Oncor Electric Delivery Company, LLC, is a Delaware Corporation and authorized to do business in the State of Texas. At all times relevant, Oncor Electric Delivery Company LLC was an employer in Dallas, Dallas County, Texas and employed more than fifteen (15) regular employees.

5.      Defendant, Oncor Electric Delivery Company, LLC, is a retail supplier for the distribution of electricity to the general public.

6.      Defendant, Oncor Electric Delivery Company LLC, is a wholly owned subsidiary of KKR & Company L. P.

7.      Defendant, KKR & Company L.P., is a leading global investment firm with deep roots in private equity, diversified capabilities, and has an impressive track record with its headquarters in the State of New York with 13 offices in 9 countries. KKR & Company L.P is authorized to do business in the State of New York.  At all times relevant, KKR & Company, L.P. was an employer in State of New York, Manhattan County and employed more than fifteen (15) employees.

8.      Defendant, KKR & Company L. P. has completed a number of landmark transactions including the 1989 leveraged buyout of RJR Nabisco, which was the largest in history at the time, as well as the buyout of Texas Utilities ("TXU") in 2007. As part of the buyout, the electric distribution part of the company is now called Oncor Electric Delivery Company, LLC. KKR & Company L.P. now has direct responsibility of making sure that all its management officials and employees, who are employed by Oncor Electric Delivery Company, LLC, comply with all federal laws against employment discrimination in the workplace.

9.      Defendant, Kerri Veitch, (hereinafter, "Defendant Veitch" or "Veitch") upon ;information and belief, at all times relevant, held the position of Human Resources Representative, for Defendant Oncor Electric Delivery Company LLC, acting in her official and individual capacity was involved in one or more decisions affecting Plaintiff's employment status including, but not limited to, decisions regarding terminations,

benefits, transfers, promotions, salary, job classification, and accommodations.

Defendant ("Veitch") is and was at all times relevant, a resident of the State of Texas.

10.     Defendant, Larry Garrett, (hereinafter, "Defendant Garrett" or "Garrett") upon information and belief, at all times relevant, held the position of Lead Protection & Control Technician, for Defendant Oncor Electric Delivery Company, LLC and exercised direct and/or indirect supervisory authority over Plaintiff or, in the alternative, was involved in one or more decisions affecting Plaintiff's employment status including, but not limited to, decisions regarding terminations, transfers, work assignments, salary, promotions, training, job classification,  performance evaluations, leave approval, and accommodations. Defendant Garrett is and was at all times relevant, a resident of State of Texas.

11.     Defendant, Larry Davis, (hereafter, "Defendant Davis" or "Davis") upon information and belief, at all times relevant, held the position of Manager for Defendant Oncor Electric Delivery Company, LLC, and in acting his official and individual capacity was involved in one or more decisions affecting Plaintiff's employment status including, but not limited to, decisions regarding termination, transfers, work assignments, salary, promotions, training, job classification, performance evaluations, leave approval, and accommodations. Defendant Davis is and was at all times relevant, a resident of the State of Texas.

12.     Defendant, Randy Efflandt, (hereinafter, "Defendant Efflandt" or "Efflandt") upon information and belief, at all times relevant, held the position of Operations Supervisor for Defendant Oncor Electric Delivery Company LLC, and

exercised direct and/or indirect supervisory authority over Plaintiff, or in the alternative, was involved in one or more decisions affecting Plaintiff's employment status including, but not limited to, decisions regarding terminations, transfers, work assignments, salary, promotions, training, job classification, performance evaluations, leave approval, and accommodations. Defendant Efflandt is and was at all times relevant, a resident of the State of Texas.

13.     Defendant, Reggie Bonner (hereinafter, "Defendant Bonner" or "Bonner") upon information and belief, at all times relevant, held the position of Manager, for Defendant Oncor Electric Delivery Company LLC, and acting on official and individual capacity was involved in one or more decisions affecting Plaintiff's employment status including, but not limited to decisions regarding terminations, transfers, work assignments, salary, promotions, training, job classifications, performance evaluations, leave approval, and accommodations, Defendant Bonner is and was at all times relevant, a resident of the State of Texas.

14.     Defendant, Kelly McNair (hereinafter, "Defendant McNair" or "McNair") upon information and belief, at all times relevant, held the position of Director, for Defendant Oncor Electric Delivery Company, LLC, and exercised direct and/or indirect supervisory authority over Plaintiff or in the alternative, was involved in one or more decisions affecting Plaintiff's employment status, including, but not limited to, decisions regarding terminations, transfers, work assignments, training, job classification, promotions, performance evaluations, leave approval, pay raises, and accommodations. Defendant McNair is and was at all times relevant, a resident of the State of Texas.

15.     Defendants John and Jane Does are fictitiously named Defendants who

are officers, employees, agents, servants or representatives of Oncor Electric Delivery Company LLC and/or KKR & Company L. P.  who have committed wrongful acts and are either joint or concurrent malfeasors with the specifically named Defendants, and who acted in their individual capacities and, therefore, are also jointly and severally liable for the acts and omissions hereinafter complained of, or are otherwise secondarily liable for such acts or omissions.

## III. BACKGROUND

16.     Texas Power & Light ("TP&L"), traces its history to the beginnings of service in northern Texas. Predecessor companies include Dallas Power & Light (DP&L), which served the city of Dallas; Texas Electric Service Company (TESCO), which served areas surrounding Fort Worth; and Texas Power & Light (TP&L), which served other areas of southern, northern and western also central Texas.

17.     Texas Utilities was formed in 1945 as a publicly-owned holding company that owned Dallas Power & Light (DP& L), Texas Power & Light (TP&L), and Texas Electric Service Company (TESCO).  The three operating companies continued to operate separately until 1984, when they merged into on operating company, called TU Electric ("TU" meaning "Texas Utilities"). In 1986, TXU merged with the parent company of Lone Star Gas, allowing TXU to become the largest provider of electricity and natural gas in the State of Texas. In 2002, the State of Texas deregulated the Texas electric market, and TXU lost its monopoly on retail electric sales in northern Texas. TXU now competes statewide against other electric companies like

Dynowatt, Texas Power, Reliant Energy, Bounce Energy, Direct Energy, Stream Energy, Gexa Energy, Green Mountain Energy, Cirro Energy, and Commerce Energy.

## III. **GENERAL ALLEGATIONS**

18.    Plaintiff began his employment with Texas Power & Light ("TP&L"), on September 11, 1974, as a Utility Man, and was assigned to the Right-Away Crew. Plaintiff took early advantage of his employment opportunity and participated in the company's four year progressive training program; and advanced to the position of Senior Lineman & Substation man. Plaintiff held the position of Protection & Control Technician Sr. (P&C-Sr.) before he was terminated on September 30, 2009.

19.    Plaintiff during the period from 1983 through 1993, worked as a Technician at the TXU System Operating Services facility in Lancaster, Texas; and as a Technician, he was occupationally exposed to a wide variety of dangerous toxic substances; which caused him to, experience health problems. During this period of time, plaintiff handled High Levels of PCP-containing dielectric oils on average, three to four times a month, with durations of approximately thirty (30) minutes or more on each occasion. As a result of working with dangerous toxic substances, Plaintiff has been diagnosed with symptoms and medical conditions which qualify him as a person with disabilities pursuant to the ADA. TXU failed to provide him with the correct personal protective equipment to perform his everyday job duties.

20.    In 1999, Dave Canon, Manager, gave Plaintiff a 5.175% pay raise because of his outstanding job performance conducting infrared inspections. He was working infrared inspections for Transmission and Distribution. He also performed contract infrared inspections for some of TXU customers. Mr. Canon told

Plaintiff that this extra on his raise was a way to reward him for the extra income the company made from his contract services to several customers.

Plaintiff on numerous occasions was given assignment to train employees.

Plaintiff was the only minority in his work group. He was the only one certified as an Infrared Theromographer Level III after Jim Davis left the group.

21.    In 2000, Plaintiff changed managers and was placed under the supervision of Defendant Kelly McNair and this is when he began to notice more difference in treatment because of race. Defendant McNair told Plaintiff that he was making more money than his white co-workers. Defendant McNair Plaintiff told Lead Technician, Jimmy Davis, that Plaintiff did not deserve the full 3.2% raise that was given to the white employees in the technician group in 2000. Plaintiff was given a 1.98% pay raise in 2000. In 2001, Plaintiff's Lead Technician changed from Jimmy Davis to Defendant Larry Garrett and the difference in treatment still continued regarding pay raise. Plaintiff was given a 1.97% pay raise in 2001, while the white employees, who had far less experience in infrared, were given a 3.3% raise. Defendant Larry Garrett made the decision in 2004, to drop Plaintiff's performance evaluation rating from 004 to 003. Plaintiff was given on reason(s) why his rating was lowered. Defendant Garrett failed to provide a legitimate non-discriminatory explanation for lower Plaintiff's performance evaluation rating.

22. In 2000-2001, Plaintiff played a key role in the development of a device called "SC 2000-Pan & Title" that was used in Infrared Inspections to quickly locate hot spots in electric lines and equipment, so that maintenance work could be performed on line and equipment before failures and costly outages took place. Alan Bern, Manager, told

plaintiff that he played a key role in saving the company $1.3 million by using the new infrared SC 2000 device in a one year period.

23.     In November 2000, Plaintiff attended the Infrared Camera Application Conference at the Infrared Training Center (ITC) located in Boston, Massachusetts to get certified as an Infrared Thermographer Level III. Plaintiff's employer paid for the course; including all of his travel expenses and time off work.

24.     In October 2004, Plaintiff attended the Infrared Camera Application Conference held in Las Vegas, Nevada to get re-certified as an Infrared Thermographer Level III. Plaintiff had to pay for the training course; including all of his travel expenses and time off work, Plaintiff also had to take a weeks vacation to attend the conference. Plaintiff was asked by a representative from FLIR Systems, Inc., the world's leader in night vision and infrared cameras; why his employer did not pay for the course. The representative further stated, that he was glad to see Plaintiff attending the training for re-certification because of his extensive experience in using the cameras. The representative had FLIR to pay the fees of $1,055.00 for Plaintiff to take the course to get re-certified as an Infrared Thermographer Level III. Defendant's accused Plaintiff of engaging in a conflict of interest scheme.

25.     Plaintiff after attending the conference was told by a co-worker that In August 2004, the Defendant Oncor Electric Delivery Company, LLC, had paid for twenty (20) White employees to get certified and re-certified and the company did pay for the employees to do so. The employees were classified as Level I & II. The employees came to Dallas, Texas from different areas of the state; plus the company paid for their travel expenses. And no one had to use vacation.

26. On or about November 15, 2004, Plaintiff met with Defendant Garrett and

Allen Bern, Manager, about getting reimbursed for his expenses. Plaintiff was

told the company will no longer pay for re-certifications for Level III re-

certifications. Defendant Garrett lied by making false states which is a violation of

18 U.S.C. § 1001. He had told me that the company was not paying for anyone

to be certified or re-certified for infrared training.

27.     On about November 17, 2004, Rickey Eads, Manager, issued Plaintiff a

letter regarding a conflict of interest regarding the $1,055.00. Plaintiff was later found

not guilty of engaging in a conflict of interest regarding the money paid by a contractor

so that he could take the course for re-certification. Defendant Garrett has never taken a

training course to become an Infrared Thermographer Level III.  On numerous

occasions before Defendant Garrett had to go to meetings with upper management, he

had to ask Plaintiff a number of questions in order for managers to believe that he knew

what he was taking about at the meetings. Plaintiff asked, Defendant Garrett on several

occasions why he did not study and take training to get certified as an Infrared

Thermographer Level III as Jimmy Davis the lead tech over the group.

28.     In December 2004, Plaintiff had a meeting with Alan Bern, Manager, and

Joe Wolf, Manager, about getting reimbursed for his travel expenses for attending the

Infrared Camera Applications Conference held in Las Vegas, Nevada, but the issue was

not resolved.

29.     On January 21, 2005, Plaintiff met with Human Resources

Representative, Ann Freyling, to discuss the disparate treatment that he was receiving

from Defendant Garrett regarding the reimbursement for his re-certification for attending

Representative, Ann Freyling, to discuss the disparate treatment that he was receiving from Defendant Garrett regarding the reimbursement for his re-certification for attending the Infrared Camera Applications Conference held in Las Vegas, Nevada. Plaintiff also told Ms. Freyling that Defendant Garratt wanted him to falsify overtime hours to get reimbursed for attending, the Infrared Camera Application Conference held in Las Vegas, Nevada, to get re-certification as an Infrared Thermographer Level III. A person knowingly and willfully, falsifies, conceals, or covers up by any trick, scheme, or device a material fact is in violation of 18 U.S.C. § 1001. Plaintiff told Defendant Garrett that he would not participate in such scheme.

30.    Shortly, after the meeting was over Defendant Garrett with his fists clinched rushed into Plaintiff's office, pushing up against him to start a fight. Plaintiff looked at him and left his office. Plaintiff did not report the incident to anyone in Human Resources, because he believed nothing was going to be done to resolve the disparate treatment that he was receiving from Defendant Garrett.

31.    Defendant Oncor Electric Delivery Company LLC's Code of Conduct, that was revised on June 11, 2010, prohibits discrimination in the workplace; including harassment and sexual harassment. Defendant Garrett at all times relevant was fully aware of the Code of Conduct when he engaged in prohibited discriminatory employment practices against Plaintiff.

32.    On December 22, 2005, Plaintiff, who was frustrated by what he perceived to be discrimination against himself, by several managers in his area of responsibility, as well as the failure of TXU Electric Delivery Company, to adequately deal with the

allegations of discrimination, filed EEOC Charge No. 310-2006-01317 against TXU

Electric Delivery Company.

33.    On or about March 17, 2006, Plaintiff was issued a low performance

evaluation by Joe Wolf (White), Assistant Dock Supervisor. Mr. Wolf failed to provide

Plaintiff any reason(s) for the low performance evaluation. On July 10, 2006, Plaintiff

was denied workers compensation benefits associated with an on- the-job injury.

34.    On or about July 17, 2006, Plaintiff again was frustrated by what he

perceived to be discrimination against himself, by several managers in his area of

responsibility, as well as the failure of TXU Electric Delivery Company, to adequately

deal with the allegations of discrimination, filed EEOC Amended Charge No. 310-2006-

0137 against TXU Electric Delivery Company.

35.    On or about July 24, 2006, Plaintiff still being frustrated by what he

perceived to be discrimination against not only himself, but other African-American

employees, by managers in his area of responsibility, as well as the failure of TXU

Electric Delivery Company, to adequately deal with the allegations of discrimination,

sought help from the Black Citizens for Justice & Order (BCJLO), and filed EEOC

Charge No. 450-2006-02560 (class-action) against TXU Electric Delivery Company.

Plaintiff and African-American employees, [Clay D. Yates, David L. Ellis, and Edward C.

Williams] were part of the class charge, plus their names were listed on EEOC's Third

Party Certificate of Charge.

36.    On or December 8, 2006, Daisy E. Joe, Director, of (BCJO), requested a

Notice of Right to Sue from the EEOC regarding EEOC Charge No. 450-2006-02560 for

Plaintiff and the other African-American employees.  After the company received notice

that the Notice of Right to Sue had been issued by EEOC, the company terminated Clay

D. Yates. This action sent a message to David L. Ellis and he was no longer interested

in pursuing the class action charge of discrimination; which left Plaintiff being the lone

wolf. Plaintiff's attorney told him to forget the class and start thinking about himself.

37.     After EEOC issued the Notice of Right to Sue, Defendant Reggie C.

Bonner, African-American, Manager, came to see about Mr. Williams' intentions

regarding the lawsuit. Mr. Williams told Plaintiff about the meeting which he had with

Defendant Bonner. Defendant Bonner offered him $50,000.00 not to, take part in the

lawsuit. Jackie Caruthers, who was Mr. Williams' crew foreman at that time, confirmed

the meeting and offer of $50,000.00 to not take part in the lawsuit. Within two months

Mr. Williams came to work driving a brand new fully loaded White Cadillac Escalade.

Defendant Bonner showed no interest in Plaintiff about the class action lawsuit at the

time.

38.     In 2008, Plaintiff met with Defendant Bonner at a local restaurant and told

him about the discriminatory employment treatment that he was receiving from

Defendant Garrett also Plaintiff at one time sent a negative email about Obama to Mr.

Bonner that was being emailed to employees and he did nothing about it. During the

meeting Defendant Bonner told Plaintiff it seemed that he was making good money

without having a sponsor within the company. Plaintiff responded by saying that he liked

his job; and that he was judged based on his experience and qualifications rather than

his race, he did not need a sponsor. He explained that JESUS the son of GOD was his

sponsor. Plaintiff requested that, he be removed from Defendant Garrett's supervision

and placed under Jim Earley's supervision. Defendant Bonner denied the request.

Defendant Bonner failed to engage in an interactive process with Plaintiff to resolve the issues of racial discrimination. Defendant Bonner was fully aware of the company's Code of Conduct, but turned a deaf ear and eyes to the issues. Defendant Bonner told Plaintiff that he was the problem. Plaintiff requested that Mr. Bonner listen to the CD that he had sent him, (A sermon by Anthony Evans his Pastor)

39.    On September 18, 2008, Defendant Garrett sent an email to Plaintiff's co-workers about the company's policy on providing a list of ALL the medications that they were taking. Plaintiff had been taking medications for years before and after Defendant Garrett became his lead technician or immediate supervisor.1989 Chemical Exposures.

40.    On September 23, 2008, Plaintiff sent an email to Gary Kendrick, a White Co-worker, asking him if Defendant Garrett had requested that he provides a list of all the medications he was taking. On September 23, 2008, Mr. Kendrick sent an email to Plaintiff stating that Defendant Garrett did not request that he provide a list of all the medications that he was using.

41.    On September 23, 2008, Plaintiff sent an email to Human Resource Representative, Ashleigh Trimble and asked her why, he was required to provide a list of all the medications that he was using. Plaintiff also stated in the email that he had provided Defendant Garrett with a list of all the medications he was using at the time.

42.    On September 23, 2008, Ms. Trimble sent an email to Plaintiff telling him to read the company's policy on the subject. Ms. Trimble stated based on the policy employees must inform their supervisors if they are taking medication that may affect their job performance. If the supervisor has reason to believe that an employee may be taking medication that could affect their job performance, they should request that

14

information from the employee. Employees are obligated to provide that information when requested.

43.     Ashleigh Trimble should have known that a "qualified individual with a disability," as defined by the ADA is not required to provide a list of all the medications that he or she are using to a management official.  Plaintiff was using medications that were "legal" prescription drugs. Plaintiff is not an alcoholic or user of drugs; which could have affected his job performance and conduct standards. Let's take for example, if Plaintiff had learned that he had Acquired Immune Deficiency Syndrome (AIDS), thus under the company's policy, he would have been required to provide a list of all the medications that he was using. However, in order to determine that Plaintiff's job performance and conduct standards were causing a problem; Defendant Garrett could have required him to take a drug test. Plaintiff was not required to take a drug test.

44.     Defendant Oncor Electric Delivery Company LLC's Code of Conduct Policy that was revised on June 11, 2010, does not require employees to provide a list of all the medications that he or she is using.

45.     In November 2008, Plaintiff attended an Infrared Camera Application Conference in Reno, Nevada to, get re-certified as an Infrared Thermographer Level III. Plaintiff had to use his vacation time; plus pay for the course including all of his travel expenses. Defendant Oncor Electric Delivery Company LLC paid for twenty (20) White employees, who received their certification; including their travel expenses.

46.     On March 10, 2009, Plaintiff suffered an on-the-job injury which aggravated his carpal tunnel. Plaintiff never requested light duty because of his injury; however, Defendant Randle Efflandt, Operations Manager, Defendant Larry Garrett,

the underground crew was located near downtown Dallas. Plaintiff was placed in a hot room without air condition from June 2009, July 2009, and August 2009 where the heat ranged from 100 to 120 degrees. Plaintiff was given only a fan to cool himself. Plaintiff's co-workers made comments about the unsafe environment that he was working in at the time. Plaintiff was made to shred over 700-25 to 40 pound bags of papers and books; including dragging the bags to a dumpster with a 4 to 5 feet wall, and stacking the begs 7 feet high. Dr. Dodge provided Plaintiff with wrist supports to wear while he was on so called light duty. Defendant Oncor Electric Delivery Company LLC, allowed its managers to take Plaintiff's company truck away from him. Nevertheless, the company permitted a White co-worker who had cancer to keep his company truck until his death.

47.    On March 15, 2009, Plaintiff was informed that adjuster, Gina Brewton, for Liberty Mutual Insurance Company had started an investigation on his claim. However, the delay between the companies caused Plaintiff from getting his carpal tunnel surgery in a timely manner. The delay caused him not to be able to return to his normal work. Plaintiff also at this time suffered immeasurable back and carpal tunnel pain because of so-called light duty work that helped to cause the need for back surgery and as of today Plaintiff has had seven (7) surgeries on hands, wrist, thumbs, and cubital tunnel on the left arm and open carpal surgery on left arm on January 31, 2012. Back surgery is pending as of today.  Plaintiff could have performed normal work, if supervisors had allowed him to use the wrist supports that the doctor had provided. The infrared inspection work was

much easier than the shredding and lifting that he was made to perform.

48.    In April 2009, Defendant Oncor Electric Delivery Company LLC, hired Coventry Health Care, a Third Party Workers Compensation Service Company, to examine Plaintiff's medical conditions, which hired  Audrey Stein Goldings, M.D.

49.    On April 28, 2009, Dr. Goldings stated in her report the following: "It is important to note that Mr. McLennan had none of the reported and or diagnosed symptoms and medical problems which are listed above prior to 1983, the year that he started working in maintenance at the TXU System Operating Service facility in Lancaster, Texas. Therefore, in consideration of all the information, and the medical and scientific data that have been outlined and discussed in this report, one is left with the inescapable and obvious conclusion that if TXU had provided to Mr. McLennan all of the appropriate and necessary personal protection equipment that should (or would) have prevented and reduced his exposure to 1,1,1-thcloroethane and PCBs, respectively, in all likelihood Mr. McLennan would not have developed many, if not the majority of his medical problems that he has experienced in the past and that he manifests today." Dr. Goldings further stated in her report dated April 28, 2009, that Plaintiff's medications include insulin Omnlpod, Amiodipine, and Citra with impression of (1) Toxin work-related expose, (2) Diabetes Mellitus, (3) Hypertension, and Obstructive sleep apnea. Dr. Goldings also stated that **Plaintiff could perform the essential job duties related to his nervous system complaints at the time according to the description that was provided by Defendant Oncor Electric Delivery Company LLC.**

50.    On September 23, 2009, Human Resources Representative,

Defendant Kerri Veitch called Plaintiff while he was at home. The purpose of the call was to tell Plaintiff that he would be discharged on September 30, 2009, because he was unable to perform the essential job duties of his position. She further told Plaintiff that once he had his carpal tunnel surgery; and was ready to come back to work he will be allowed to return. Plaintiff was never given the opportunity to return to work.

51.    On March 10, 2010, Plaintiff had his first carpal tunnel surgery. On Tuesday, April 20, 2010 @ 1:20 AM Plaintiff sent an email to Defendant Kerri Veitch (kerri.veitch@oncor.com) and Ashleigh Trimble (ashleigh.teimble@oncor.com) telling them, that he had completed his surgery; and to confirm what he was told before the surgery, he could return to work after having the surgery. Defendant Veitch and Ashleigh Trimble failed to respond to Plaintiff's email which he sent on April 20, 2010.

52.    Ronnie Walker, White employee, who is and was at all times relevant, a qualified individual with a disability as defined by the ADA. Since 1993, he held the position Distribution Operations Technician, Sr. (DOT). In 1998, he was diagnosed with Cerebellar Atrophy. Test performed by a neurologist confirmed that his condition was not genetic; and that his condition must be environmentally caused. When he gave a summary of his environmental exposures to a neurologist, she was highly suspicious of at least two of the products that he had used regularly. Mr. Walker's co-workers were telling his supervisor that Mr. Walker had MS. In August 2001, Mr. Walker was advised by his manager that he had twelve (12) months to find a position inside TXU because he would not be allowed to keep his DOT job. Mr. Walker's manager specifically restricted him from climbing poles and working the bucket truck based on the finding of TXU's doctor. Over the next few months he applied for and was interviewed for several

positions, but he was not hired for any of the positions. During the twelve (12) months while on the "Salary Continuation" period in August 2001 and August 2002, he continued to perform his work like he had been doing since 1993, but with less restrictions placed on him by management.

53.     In April 2002, Mr. Walker contacted the EEOC about filing a charge because he believed that he was being discriminated against because of his disability. Mr. Walker was told he was not a qualified as an individual with a "disability" because he could walk, talk, see, and smell odors. Mr. Walker had been diagnosed with Cerebellar Atrophy. Furthermore, according to his neurologist he had been exposed to some of the same toxicants that were causing health problems for Plaintiff. On May 8, 2002, Mr. Walker's supervisor told him, that he would be terminated on August 31, 2002, unless he found another job inside the company; and that he could apply for Long Term Disability. On August 31, 2002, he was terminated. Within a short time after Defendants received Mr. Walker's letter dated September 23, 2002, he was allowed to return to work and given a different job.

54.     Plaintiff was not given an opportunity by managers to find another position within the company before he was terminated on September 30, 2009. Furthermore, Defendant Oncor Electric Delivery Company LLC was made aware by receiving Dr. Goldings' letter dated April 28, 2009, that Plaintiff could perform the essential job duties for his position. Defendants brushed aside reasoning in Plaintiff's case. Plaintiff could have continued to perform the essential job duties of his position if he was allowed to

wear the wrist supports after having carpal tunnel surgery which could have been a reasonable accommodation.

55. On December 1, 2010, Plaintiff, was frustrated by what he perceived to be discrimination against himself, by management in his area of responsibility, as well as the failure of Oncor Electric Delivery Company LLC, to adequately deal with the allegations of discrimination, filed EEOC Charge No. 31A-2010-00038 against Oncor Electric Delivery Company LLC alleging that, among other things, adverse actions have been taken against him because of his race and disability in retaliation for filing previous EEOC charges of discrimination.

56.     On November 22, 2011, the EEOC issued Plaintiff a Notice of Right to Sue with regard to EEOC Charge No. 31A-2010-00038. EEOC will continue to its processing of the charge because **it is apparent that the agency has discovered information that affects a class under the ADA**. (a copy of which is attached hereto).

57.     As a result of Defendants' actions, plaintiff has suffered lost of income, lost fringe benefits, mental anguish, emotional distress, inconvenience, and loss of enjoyment of life.

58.     As a result of Defendants' actions, Plaintiff will continue to suffer lost of income, lost fringe benefits, mental anguish, emotional distress, inconvenience, and lost of enjoyment of life.

## COUNT ONE

### (Disparate Treatment Pursuant to Title VII)

59.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 58  as fully set forth herein.

60.     Plaintiff was well qualified for the position he held and was released by his doctor to return to work after having his carpal tunnel surgery.

61.     Plaintiff was told that after he had his carpal surgery that he would be allowed to return to work and continue his 35 years of service.

62.     Plaintiff was subjected to adverse employment actions by Defendants.

63.     Similarly situated individuals outside of Plaintiff's protected class were treated more favorably than Plaintiff.

64.     Defendants willfully, intentionally and unlawfully discriminated against Plaintiff on the basis of his race and disability in violation to Title VII and ADA.

65.     Defendants' actions were done with malice or with reckless indifference to Plaintiff's federally protected rights.

## COUNT TWO

### (Retaliation)

66.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 65 as through fully set forth herein.

67.     In complaining about discriminatory acts, Plaintiff engaged in protected activity under Title VII and ADA.

68.     A causal link exists between the Plaintiff's protected activity and Defendants' adverse action.

69.     Defendants willfully, intentionally and unlawfully discriminated against Plaintiff in violation of Title VII and ADA.

70.     Defendants' actions were done with malice or with reckless indifference to Plaintiff's federally protected rights.

# COUNT THREE

## (Race Discrimination Pursuant to 42 U.S.C. § 1981)

71.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 70 as though fully set forth herein.

72.     In treating Plaintiff less favorably than similarly situated individuals outside of Plaintiff's protected class and/or retaliating against Plaintiff in retaliation to his complaints of discrimination, Defendants **violated 42 U.S.C. § 1981.**

73.     Defendants' actions were done with malice or with reckless indifference to Plaintiff's federally protected rights.

**WHEREFORE,** Plaintiff Robert V. McLennan request that this Honorable Court grant judgment against Defendants and:

(A)     An award of damages against Defendants, jointly and severally, for the violations alleged herein, including, but not limited to, compensation for lost and future wages, and benefits including pre and post judgment interest, compensatory damages, and mental anguish and emotional distress damages and other appropriate relief to make Plaintiff whole;

(B)     Award Plaintiff punitive damages;

(C)     Award Plaintiff attorneys' fees and costs of this action; and

(D)     Award Plaintiff such other legal and equitable relief as this Court deems just and proper.

**RESPECTFULLY SUBMITTED this 21st. day of February, 2012.**

By _Robert V. McLennan_

**Robert V. McLennan**

# **EXHIBITS**

1. EEOC Charge of Discrimination Charge No. 31A-2010-00038

2. EEOC's Notice of Right to Sue Charge No. 31A-2010-00038

3. EEOC's Amended Charge of Discrimination Charge No. 310-2006-01317

4. EEOC's Charge of Discrimination Charge No. 310-2006-01317

5. EEOC's Third Party Certification of Charge—Charge No. 450-2006-02560



**EXHIBITS**

# 1

EEOC Form 5 (11/09)

# AMENDED  CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [X] FEPA | 31A-2010-037 |
| [X] EEOC | 31A-2010-00038 |

**Fort Worth Community Relations Department** _____ and EEOC

_State or local Agency, if any_

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Robert V. McLennan** | | ▉ |

| Street Address | City, State and ZIP Code |
|---|---|
| **901 Canyon Ridge Dr., Desoto, TX 75115** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **ONCOR ELECTRIC DELIVERY COMPANY** | **101 - 200** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **1500 Park Street,  Dallas, TX 75201** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **ONCOR ELECTRIC DELIVERY COMPANY** | **101 - 200** | **(214) 486-3667** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1601 Bryan Street, Suite 22-105B, Dallas, TX 75201** | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

| | | | | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|---|---|---|
| [X] RACE | [ ] COLOR | [ ] SEX | [ ] RELIGION | [ ] NATIONAL ORIGIN | Earliest: **09-25-2009** | Latest: **09-30-2009** |
| [X] RETALIATION | [ ] AGE | [X] DISABILITY | [ ] GENETIC INFORMATION | |
| [ ] OTHER (Specify) | | | | [ ] CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

### I. Personal Harm
On September 25, 2009, I was told that I would be discharged as of September 30, 2009 because I was unable to perform the essential job duties of my position.  I believe my race, black, and retaliation for previously filing complaints of race discrimination with the EEOC also were factors in my discharge.

### II. Respondent's Reason for Adverse Action
Kerri Veitch, Anglo, Human Resources representative, told me that I was being separated from the company because I was unable to perform the essential job duties of my position.

### III. Discrimination Statement
I believe that I have been discriminated against on the basis of disability, in violation of the Americans with Disabilities Act of 1990, and on the basis of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended, and retaliation, in violation of section 704(a) of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| X 6-5-10    X _Robert V McLennan_ <br> Date         Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |



**<u>EXHIBITS</u>**

# 2

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:  Robert V. McLennan
     901 Canyon Ridge Dr.
     Desoto, TX 75115

From:  Dallas District Office
       207 S. Houston St.
       3rd Floor
       Dallas, TX 75202

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 31A-2010-00038 | O. Marie Holland<br>Investigator | (214) 253-2878 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐ The EEOC is terminating its processing of this charge.

☒ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Michael C. Fetzer,
Director

11-22-2011
*(Date Mailed)*

Enclosures(s)

cc:   ONCOR ELECTRIC DELIVERY
      c/o Stephen Cockerham
      Brown McCarroll, LLP
      2001 Ross Avenue, Suite 2000
      Dallas, TX 75201

**Robert V. McLennan**

**901 Canyon Ridge Drive**

**Desoto, Texas 75115**

**Home (972) 223-8105**

**AMENDED LETTER**

December 15, 2011

Michael C. Fetzer
District Director
EEOC Dallas District Office
207 South Houston Street, 3rd Floor
Dallas, Texas 75202

**RE:  Robert V. McLennan v. Oncor Electric Delivery**
**EEOC Charge No. 31A-2010-00038**

Dear Mr. Fetzer:

The purpose of this letter is to inform you that I have given written authorization to the Maricopa County NAACP Branch to call you and inquire about the status in reference to the above charge number. A representative will be in contact with you soon. On Tuesday, November 23, 2011, I received a **NOTICE OF RIGHT TO SUE** for EEOC Charge No. 31A-2010-00038. However, after reviewing the document there are some questions that I need answered. There are two boxes with an X marked. One of the boxes indicates that EEOC will continue to process the charge. It is my understanding that once a Notice of Right to Sue has been issued to an aggrieved person the case has been dismissed. Therefore, how can the EEOC continue to process this charge? Is this case still open for further investigation regarding my Title VII and retaliation claims?

I appreciate a response from you regarding these matters within five days of receipt of this letter.

Sincerely,


Robert V. McLennan

Cc: O. Marie Holland
    Eddie B. Johnson
    Gary Bledsoe
    Rev. Oscar S. Tillman
    John Treadwell



# **<u>EXHIBITS</u>**

# # 3

EEOC

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | **AMENDED** |
| ☒ EEOC | **310-2006-01317** |

**Texas Workforce Commission Civil Rights Division**          and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Robert V. Mclennan** | **(972) 223-8105** | ▮▮▮▮▮▮ |

| Street Address | City, State and ZIP Code |
|---|---|
| **901 Canyon Ridge Dr., Desoto, TX 75115** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **T X U ELECTRIC DELIVERY** | **Unknown** | **(817) 215-4506** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1201 S. Sylvania Ave.,  Ft. Worth, TX 76111** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **10-04-2004**   Latest **11-30-2005**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**THE CHARGE IS AMENDED TO INCLUDE CONTINUED ACTS OF RETALIATONS. ALL OTHER ISSUES AND BASES OF DISCRIMINATION REMAIN THE SAME AS INDICATED ON THE INTIAL CHARGE OF DISCRIMINATON.**

**I.      PESONAL HARM:**
On March 17, 2006, I was issued a low performance evaluation compared to previous evaluations.
On July 10, 2006, I was denied workers compensation (#01043449) benefits associated with a job injury in 1992.

**II.      RESPONDENT'S REASON FOR THE HARM:**
Joe Wolf, (white), Assistant Dock Supervisor, did not give a reason for the low performance evaluations. He stated I ranked in the "top or upper level in his work group".

The company has not given me any reasons for the continuous denial of worker compensation benefits.

**III.      DISCRIMNATION STATEMENT:**
I believe I have been both discriminated and retaliated against in violation of  Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, due to my race Black, and for raising work related issues showing I was treated differently compared to non-Black employees.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| **Jul 17, 2006**          *✓ Robert V Mc Lennan* | *Robert V Mc Lennan* |
| Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *17 July 2006* |



**<u>EXHIBITS</u>**

# # 4

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 310-2006-01317 |

**Texas Workforce Commission Civil Rights Division** and EEOC

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| Mr. Robert V. Mc Lennan | (972) 223-8105 | ▓▓▓▓ |

Street Address                         City, State and ZIP Code

**901 Canyon Ridge Dr., Desoto, TX 75115**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| T X U ELECTRIC DELIVERY | Unknown | (817) 215-4506 |

Street Address                         City, State and ZIP Code

**1201 S. Sylvania Ave., Ft. Worth, TX 76111**

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

Street Address                         City, State and ZIP Code

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **10-04-2004**   Latest **11-30-2005**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**I. Personal Harm:**

I requested if I could be reimbursed for re certification around October 4, 2004, Larry Garrett, Lead Technician stated the company is not paying for anyone to be re certified.

I found out that in August 2004, the company paid for 20 employees re certification.

November 15, 2004, I met with Larry Garrett, Lead Technician and Alan Bern, Manager to ask about getting reimbursed for re certification.   I let them know that Flir had told me they would reimburse the amount for the course.

November 17, 2004, I got a letter regarding conflict of interest from Rickey Eads, Manager.

Around December 2004, I spoke to Alan Bern, Manager and Joe Wolf, Manager about the reimbursement and the conflict of interest regarding reimbursement.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Dec 22, 2005** *(Date)*   *Robert V Mc Lennan* *(Charging Party Signature)* | *Robert V Mc Lennan* SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* 12/22/05 |

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 310-2006-01317 |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| State or local Agency, if any | |

THE PARTICULARS ARE  *(Continued from previous page):*

Around February 7, 2005, I spoke to Ann Freyling, HR Rep about reimbursement and she didn't recommend the department reimburse me for the re certification in October 2004.   She did advise the Manager, Joe Wolf to discuss with management to let her know if they will reimburse the upcoming re certification in 2008.

I have been denied going to conferences and additional training the same as the P & C technicians by Larry Garrett, Lead Technician.

The company allowed Flir to reimburse me in March of 2005, for the course in re certification.

Around June or July 2005, I have been sent on out of town assignments to Odessa and Midland Texas and I continue to be sent out of town.

II.  **Respondent's Reason for Adverse Action:**

No reason given.

III.  **Discrimination Statement:**

I believe I have been both discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended and Section 704 (a) of the same Act due to my race, Black for raising work related issues in which I have not been treated the same as other employees.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>*Robert V Mc Junkin* |
| Dec 22, 2005<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year)<br>12/22/05 |



**<u>EXHIBITS</u>**

# 5



EEOC Form 5 (501)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 450-2006-02560 |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl Area Code) | Date of Birth |
|---|---|---|
| Black Citizens for Justice Law & Order (BCJLO) | (214) 328-3722 | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| P.O. Box 180042 | Dallas, TX 75218 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| TXU CORP. | 500 or More | (214) 979-3000 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1601 Bryan Street, Dallas, TX 75201 | | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | Earliest 08-01-2005   Latest 07/01/06 |
| ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.) | ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**PERSONAL HARM:**
From approximately August 01, 2005 and continuing Black employees at TXU Electric Delivery in Desoto and
Comanche Peak location have been subjected to a difference in the terms and condition of their employment.

**RESPONDENT'S REAONS FOR ADVERSE ACTION:**
No reason given.

COPY

**CLASS:**

**DISCRIMINATION STATEMENT:**
Black employees have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as
amended in that they are subjected to a difference in disciplinary action, subjected to racial epithets, not paid for
time worked, and given lower performance evaluations which results in lower bonus awards and retaliated
against when they complained about discriminatory treatment.   Also Whites are given jobs over Blacks, when
Blacks trained them for particular jobs, and Black employees are told they are too Black because they complain
of injustice.

Additionally, Systematic poor evaluations for Black employees-underminding job performance (2)  Blacks being
denied promotions when they are qualified (3) ratings of jobs are not equal (4) Black employees are being
called nigger (5) remarks have been made pertaining to Niggers by employees in front of management  and
because of prior charges being with EEOC Blacks are being retaliated against.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |

(This Form is affected by the Privacy Act. See Privacy Act Statement below before completing.)

Case 3:05-cv-00545 Document 37 Filed 03/26/06 Page 37 of 41 PageID 41

I certify that the charge specified below is filed on behalf of person(s) aggrieved by the respondent(s) named in the charge. The person(s) named below are aware that a charge has been filed on their behalf.

BCJLO (Black Citizen for Jud... Edward...)    v.    TXU Corp.    450-2006-02560
charging party                                                    respondent    charge number

LIST AGGRIEVED PERSON(S) BELOW  (To be completed by the Charging Party )

(If more space is needed, make copies of form before completing)

| NAME | ADDRESS | PHONE NUMBER |
|---|---|---|
| CLAY D. YATES | 2911 San Rocendo St. #4324 | 817-301-3247 |
| Robert V McLennan | 901 Canyon Ridge Dr. DeSoto TX. 75115 | 972-223-8105 |
| David L Ellis | 3808 Twilight Dr. South Ft. Worth TX 76116 | 817-320-1864 |
| Edward C Williams | 2909 Midbury Lancaster TX 75134 | 469-595-2616 |

I declare under the penalty of perjury that the above is true and correct.

SIGNATURE OF PERSON FILING ON BEHALF OF AGGRIEVED PERSON(S)    DATE    TELEPHONE NUMBER

Daisy E. Joe, Sr. BCJLO    7/24/06    214-328-3722

Privacy Act Statement: This form is covered by the 1974 Privacy Act, Pub. Law 93-579. Authority for requesting personal data and its uses are:

Form. EEOC Form 151, Third Party Certification of Charge (5/01)    Authority. 42 U.S.C. 2000e-5(b); 29 U.S.C. 626(d); 29 U.S.C. 12117(a)

Principal purposes. Provides certification that there are aggrieved person(s) on whose behalf the charge is being filed in order to preserve their right to sue and, under Title VII or the ADA, to establish a basis for EEOC to act on the charge.

Routine uses.  To establish the existence of aggrieved person(s) within the meaning of Title VII, the ADA, or the ADEA on whose behalf the charge is being filed and, as may be required, to establish their eligibility to receive a notice of right to sue.

Disclosure is mandatory; effect of not providing data.  EEOC ordinarily will not proceed to process a charge filed on behalf of aggrieved persons without evidence of their existence.  However, there is no personal liability for failure to provide such evidence and it is not required that this form be used.

### Request For Right To Sue

As representative for Robert McLennan & Edward Williams I am requesting   the right to sue on charge # 450-2006-02560.


( Due to circumstances   of  how the EEOC views BCJLO , we feel that
 the charging parties we represent , their charges are not being viewed
 Properly or fairly.)




Dated : December   8. 2006

Signed:

Daisy E.Joe
Dir. BCJLO

n 161 (3/98)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**DISMISSAL AND NOTICE OF RIGHTS**

To: Robert V. Mclennan
01 Canyon Ridge Dr.
Jesoto, TX 75115

From: **Dallas District Office - 450**
207 S. Houston St.
3rd Floor
**Dallas, TX 75202**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 2006-01317 | **Victor Galvan,** Investigator | **(214) 253-2876** |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

**- NOTICE OF SUIT RIGHTS -**
(See the additional information attached to this form.)

e VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act: This will be the only ce of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under eral law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may different.)

ual Pay Act (EPA): EPA suits must be filed in federal or state court within 2 years (3 years for wilful violations) of the ged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** ore you file suit may not be collectible.

On behalf of the Commission

_(signature)_ 08-11-06

**Michael C. Fetzer,** (Date Mailed)
Director

closures(s)

Mr. Kyle R. Davis, SPHR
Director – Employee & Leabor Relations
TXU ELECTRIC DELIVERY
1601 Bryan Street
Dallas, TX 75201

Ms. Deisy E. Joe
BCJLC
P.O. Box 180042
Dallas  TX 75218

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| **(a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Robert V. McLennan | Oncor Electric Delivery Company LLC, et al. (See list of Parties for remaining Defendants) |

**(b)** County of Residence of First Listed Plaintiff   Dallas County Texas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

RECEIVED
FEB 2 1 2012
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

3-12CV-531-G

ORIGINAL

## I. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ |

## V. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | PROPERTY RIGHTS | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | LABOR | SOCIAL SECURITY | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 895 Freedom of Information Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | | | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | FEDERAL TAX SUITS | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | IMMIGRATION | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district *(specify)*   ☐ 6 Multidistrict Litigation |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Title VII Civil Rights of 1964, ADA of 1990 , and 42 U.S.C. Section 1981
Brief description of cause:
Racial Discrimination, Disability, & Retaliation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23      DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*      JUDGE _____      DOCKET NUMBER _____

DATE _____     SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____