NORTHERN DISTRICT OF TEXAS

FILED

AUG 18 2014

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ROBERT V. MCLENNAN,                  §
          Plaintiff,                 §
                                     §
v.                                   §      No. 3:12-CV-531-G (BF)
                                     §
ONCOR ELECTRIC DELIVERY              §
COMPANY, LLC,                        §
          Defendant.                 §

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

This case was referred to the United States Magistrate Judge for pretrial management. Before the Court is Defendant Oncor Electric Delivery Company, LLC's ("Defendant") Motion for Summary Judgment [D.E. 50]. Based on the following reasons, the undersigned recommends that the Court GRANT Defendant's Motion for Summary Judgment [D.E. 50].

## BACKGROUND

Plaintiff Robert V. McLennan ("Plaintiff") is a former employee of Defendant's company. Plaintiff sued Defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"); and 42 U.S.C. § 1981 ("Section 1981"). *See* Compl. [D.E. 3 at 2]. Plaintiff alleges (1) disparate treatment under Title VII and the ADA; (2) retaliation for engaging in protected activity under Title VII and the ADA; and (3) race discrimination under Section 1981. *See id.* [D.E. 3 at 20-22]. Plaintiff was employed as a protection and control technician ("P&C Technician") at Defendant's company and Plaintiff's work involved infrared inspection of electrical lines. *See id.* [D.E. 3 at 2]; Def.'s Br. [D.E. 48 at 12]. Plaintiff was employed at Defendant's company for approximately 35 years. *See id.* [D.E. 3 at 2]. Plaintiff alleges that in 2000 and 2001, he received a lower pay-raise than similarly situated

or less experienced Caucasian employees. *See id.* [D.E. 3 at 8]. Plaintiff also maintains that in 2004, Defendant failed to reimburse him for a trip he took to Nevada to get re-certified as a Level III Infrared Thermographer. *See id.* [D.E. 3 at 9]. Plaintiff contends that Defendant reimbursed Caucasian employees for similar training. *See id.* [D.E. 3 at 9]. However, Defendant maintains that it stopped reimbursing Plaintiff for Level III certification after the year 2000 because it was no longer required for Defendant's job after deregulation of the energy industry. *See* Def.'s Reply [D.E. 54 at 3 n.1]. Plaintiff contends that he was previously passed over for a promotion because he did not have the Level III certification. *See* Pl.'s Ex. [D.E. 53-1 at 29].

On December 22, 2005, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). *See* Compl. [D.E. 3 at 11]. On March 17, 2006, Plaintiff was issued a low performance evaluation by one of his supervisors without explanation. *See id.* [D.E. 3 at 12]. On July 17, 2006, Plaintiff filed his amended charges with the EEOC. *See id.* [D.E. 3 at 12]. On March 13, 2007, Plaintiff filed suit against Defendant's predecessor company, Texas Utilities Electric Company ("Texas Utilities") in the 101st Judicial District Court in Dallas County, Texas alleging retaliation and intentional infliction of emotional distress in violation of Title VII, Section 1981 and/or Texas statutes. *See* Original Pet. [D.E. 1 at 16-18; No. 3:07-CV-628-K]. On April 11, 2007, Texas Utilities removed that case to this Court. On August 24, 2008, the Court granted Texas Utilities' motion for summary judgment dismissing all of Plaintiff's claims with prejudice. *See* Order [D.E. 33 at 7; No. 3:07-CV-628-K].

On August 1, 2008, Plaintiff's supervisor, Larry Garrett informed Plaintiff that he would not be reimbursed for attending an infrared camera conference in Nevada in November of 2008. *See* Compl. [D.E. 3 at 15]; Def.'s Ex. [D.E. 49-22 at 18]. In September of 2008, Plaintiff reported a back

2

strain injury to Defendant. *See* Pl.'s Resp. [D.E. 52 at 6]. At some point in 2008, Plaintiff met with Reggie Bonner, one of Defendant's African American managers to discuss an incident with Larry Garrett. *See* Compl. [D.E. 3 at 13]. Plaintiff informed Bonner that Garrett discriminated against him and that he also sent a negative email regarding the President to Plaintiff and other employees. *See id.* [D.E. 3 at 13]. Plaintiff asked Bonner if he could have a supervisor other than Garrett but Bonner denied that request. *See id.* [D.E. 3 at 13]. In September of 2008, Garrett sent an e-mail to Plaintiff requesting a list of medications he is taking. *See id.* [D.E. 3 at 14]. Plaintiff contends that Garrett did not make such a request from a Caucasian employee. *See id.* [D.E. 3 at 14]. In December of 2008, Defendant created the Essential Functions Analysis ("EFA") for Plaintiff's position. *See* Def.'s Reply [D.E. 54 at 18]. The physical requirements in the EFA were taken from a prior job description for the P&C Technician. *See id.* [D.E. 54 at 19]; Def.'s Ex. [D.E. 49-21 at 6].

In March of 2009, Plaintiff was diagnosed with bilateral carpal tunnel syndrome which was reported to Defendant at that time. *See* Def.'s Ex. [D.E. 49-19 at 18]. Plaintiff explained that his wrist and thumb felt "real tight" and he "couldn't hardly move it." *See id.* [D.E. 49-19 at 16]. Plaintiff opined that the swelling was due to "holding the camera . . . just constant moving [of his] fingers." *See id.* [D.E. 49-19 at 17]. Plaintiff testified that prior to his carpal tunnel diagnosis, he felt fatigue and tightness in his hands from work, but he never went to the doctor previously for these issues. *See id.* [D.E. 49-19 at 18]. Plaintiff contends that from June through August of 2009, while he never requested light/restricted duty for his injury, Plaintiff was placed in a hot room without air conditioning and given the task of shredding heavy bags of paper and books. *See* Compl. [D.E. 3 at 16]. Plaintiff contends that his main assignment was to move large file cabinets filled with folders and paper to a shredder, shred the paper and stack bags full of shredded paper in a dumpster or

3

another room. *See* Pl.'s Resp. [D.E. 52 at 8-9]. Plaintiff contends that the light duty work he was

assigned caused him significant back, hand and wrist pain. *See* Compl. [D.E. 3 at 16]. Plaintiff

asserts that he could have performed his normal work if his supervisors allowed him to use the wrist

supports that his doctor provided. *See id.* [D.E. 3 at 16]. Further, Plaintiff contends that Defendant

reassigned Plaintiff's company vehicle because he was allegedly unable to perform his regular duties

whereas a Caucasian employee who had cancer was permitted to keep his vehicle until his death. *See*

*id.* [D.E. 3 at 16]; Pl.'s Resp. Br. [D.E. 52 at 22].

In April of 2009, Defendant hired a third-party workers compensation service company to

examine Plaintiff's medical conditions. *See* Compl. [D.E. 3 at 17]. The doctor hired by the third-

party company, Dr. Audrey Stein Goldings stated on April 28, 2009 that Plaintiff could perform his

essential job duties according to the descriptions provided by Defendant. *See id.* [D.E. 3 at 17].

However, subsequently, on August 27, 2009 and September 17, 2009, Plaintiff's Workers'

Compensation physician, Dr. William D. Dodge, determined that Plaintiff could not perform his

essential job duties. *See* Def.'s Ex. [D.E. 49-11 & 49-12]. Furthermore, on September 26, 2009, Dr.

Dodge determined that Plaintiff could not return to work from September 26, 2009 through October

26, 2009. *See* Def.'s Ex. [D.E. 49-13]. Plaintiff eventually had four surgeries on his wrists and hands

with the first surgery taking place in April of 2010 and the last surgery in January of 2012. *See id.*

[D.E. 49-19 at 22-23]. Plaintiff contends that a delay by his insurance company prevented him from

getting his surgery in a timely manner. *See* Compl. [D.E. 3 at 16]. Plaintiff further asserts that the

strain put on his hands and wrists from his light duty tasks further exacerbated his injuries which

necessitated more extensive surgeries. *See* Def.'s Ex. [D.E. 49-19 at 27]. Defendant contends that

Plaintiff could have had the surgery in a timely manner under his work insurance but he chose not

4

to do so. Def.'s Br. [D.E. 48 at 25].

Plaintiff contends that on September 23, 2009, Defendant's human resources representative called him to inform him that he will be discharged on September 30, 2009 because he was unable to perform the essential job duties of his position but that he would be permitted to return to his job after his surgery. *See* Compl. [D.E. 3 at 18]. However, Plaintiff contends that he was not permitted to return to his job nor given an opportunity to find another position within the company as was given to a Caucasian employee. *See id.* [D.E. 3 at 19]. Plaintiff contends that Defendant was made aware by Dr. Goldings' April 28, 2009 letter that he could perform his essential job duties after having carpal tunnel surgery if he was permitted to wear the wrist supports. *See id.* [D.E. 3 at 19-20]. On December 14, 2009, Plaintiff filed his Charge of Discrimination with the EEOC regarding his September 30, 2009 termination. *See* Def.'s Br. [D.E. 48 at 26]. On June 5, 2010, Plaintiff filed his Amended Charge of Discrimination which added a claim of disability discrimination.[1] *See id.* [D.E. 48 at 27]; Compl. [D.E. 3 at 20, 26]. On November 22, 2011, the EEOC issued Plaintiff his Notice of Right to Sue. *See* Compl. [D.E. 3 at 20]. Plaintiff filed the instant lawsuit on February 21, 2012.

## STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). When a party moves for

---

1. While Plaintiff's Complaint states that he filed his EEOC Charge No. 31A-2010-00038 on December 1, 2010, the Amended Charge of Discrimination (31A-2010-00038) shows that Plaintiff filed his amended charge on June 5, 2010. *See* Compl. [D.E. 3 at 20, 26]. Plaintiff has not submitted the original Charge of Discrimination which the June 5, 2010 charge amends.

summary judgment on a claim on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing to the absence of admissible evidence to support the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the opposing party must go beyond his pleadings and designate specific facts showing that there is a genuine issue for trial on that claim. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandatory if the opposing party fails to meet his burden. *Little*, 37 F.3d at 1076. The opposing party's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F. Supp. 2d 613, 623 (N.D. Tex. 2007). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent summary judgment evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Furthermore, if no factual showing is made in opposition to a motion for summary judgment, the district court is not required to search the record *sua sponte* for some genuine dispute of material fact. *See Christensen v. Bank of America, N.A.*, 5:10-CV-176-C, 2011 WL 7070568, at *2 (N.D. Tex. Nov. 4, 2011) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Forsyth v. Barr*, 19 F.3d 1527, 1536-37 (5th Cir. 1994)). All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

## ANALYSIS

### I. Precluded Matters

Defendant argues that because Plaintiff filed his original charge of discrimination with the

6

EEOC on December 14, 2009, any purported unlawful employment acts for which Plaintiff has sued under Title VII and the ADA which occurred prior to February 17, 2009 are barred by limitations because Plaintiff is required to file a charge of discrimination with the EEOC within 300 days of the alleged unlawful act. *See* Def.'s Br. [D.E. 48 at 32]. Furthermore, Defendant argues that some of Plaintiff's claims are barred by *res judicata* and collateral estoppel. *See id.* [D.E. 48 at 33-34]. Defendant argues that *res judicata* bars Plaintiff's claims against Defendant concerning: (1) infrared recertification training in 2004; (2) alleged poor performance evaluations; (3) alleged unfavorable work assignments; and (4) alleged denials of opportunities to obtain higher paying positions within the company. *See id.* [D.E. 48 at 34]. Furthermore, Defendant argues that collateral estoppel bars any complaints in the present lawsuit regarding Defendant's refusal to pay for infrared training up through September 24, 2008, the date the judgment in the first lawsuit became final. *See id.* [D.E. 48 at 34].

Plaintiff does not dispute Defendant's arguments regarding his claims being precluded under the statute of limitations, *res judicata* and collateral estoppel, other than disputing Defendant's contention that Plaintiff's claim regarding non-payment for training in 2008 is barred because Plaintiff alleged that he was required to pay for his re-certification in November of 2008 whereas the judgment in the prior lawsuit was entered in August of 2008. *See* Pl.'s Br. [D.E. 52 at 10]. However, because Defendant denied Plaintiff's request for reimbursement on August 1, 2008, Plaintiff's argument lacks merit. *See* Def. Ex. [D.E. 49-22 at 18]. Therefore, any purported unlawful employment acts for which Plaintiff has sued under Title VII and the ADA that occurred prior to February 17, 2009 will not be considered. Furthermore, issues and claims litigated in the prior lawsuit will not be considered.

## II. **Count One - Disparate Treatment Under Title VII and ADA**

### A. Disparate Treatment Under Title VII

In order to establish a *prima facie* case of disparate treatment under Title VII due to race, the plaintiff must demonstrate that he (1) is a member of a protected class; (2) was qualified for his position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class or others similarly situated were treated more favorably. *Manley v. Invesco*, 555 Fed. App'x 344, 348 (5th Cir. 2014) (citing *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)). If the plaintiff presents a *prima facie* case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *See Wilson v. Exxon Mobil Corp.*, No. 13-30985, 2014 WL 3378323, at *2 (5th Cir. July 11, 2014). If the employer is able to articulate a legitimate reason for its action, the inference of discrimination disappears and the plaintiff must present evidence that the given reason is merely pretext for racial discrimination. *See id.*

Defendant argues that there is no evidence other than Plaintiff's conclusory assertions that any ultimate employment decisions, such as hiring, granting leave, discharge, promotion or compensation, flowed from the actions that Plaintiff asserts in support of his racial discrimination claim. *See* Def.'s Br. [D.E. 48 at 37]. Furthermore, Defendant asserts that Plaintiff has no evidence that any individual similarly situated to him was not discharged after exhausting his leave under Defendant's salary continuation policy because he could no longer perform the essential duties of his job. *See id.* [D.E. 48 at 38]. Plaintiff did not address Defendant's arguments that Plaintiff failed to establish a *prima facie* case of disparate treatment under Title VII due to race. The Court is not required to search the record for evidence supporting Plaintiff's disparate treatment claim under Title

8

VII. *See Christensen*, 2011 WL 7070568, at *2. It is Plaintiff's burden to point to evidence in response to Defendant's argument that Plaintiff's *prima facie* case of disparate treatment under Title VII due to race fails. Therefore, summary judgment should be granted for Plaintiff's failure to meet his burden with respect to this claim.

## B. Disparate Treatment Under ADA

In order to establish a *prima facie* case of disparate treatment due to disability, the plaintiff must show: (1) he is disabled; (2) he is qualified to do the job; (3) he was subject to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees. *See McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000). In order to establish a *prima facie* case of discrimination based on a failure to accommodate a disability, the plaintiff is required to show that: (1) the employer is covered by the statute; (2) he is an individual with a disability; (3) he can perform the essential functions of the job with or without reasonable accommodation; and (4) the employer had notice of the disability and failed to provide the accommodation. *See Bridges v. Dep't of Soc. Serv.*, No. 00-30804, 2001 WL 502797, *1 (5th Cir. Apr.27, 2001). If the plaintiff demonstrates a *prima facie* case, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision. *Cardiel v. Apache Corp.*, 559 Fed. App'x 284, 288 (5th Cir. 2014). If the employer satisfies its burden, the plaintiff then bears the burden of showing that the employer's explanation is merely a pretext for intentional discrimination. *See id.*

Defendant argues that Plaintiff cannot establish a *prima facie* case of disability discrimination because the evidence clearly establishes that Plaintiff could not return to work on the date of his termination. *See* Def.'s Br. [D.E. 48 at 41]. Defendant points to the September 26, 2009 report from

9

Plaintiff's physician, Dr. William D. Dodge stating that Plaintiff could not return to work from September 26, 2009 through October 26, 2009. *See id.* [D.E. 48 at 41]; Def.'s Ex. [D.E. 49-13]. Further, Defendant contends that Plaintiff completed an application for long term disability shortly after his termination where he represented that he could not perform the essential functions of his job. *See id.* [D.E. 48 at 41]. In addition, Defendant points to Plaintiff's deposition testimony that as of August 22, 2013, the date of his deposition, he still could not perform the job of a P&C Technician and that he could not have performed the essential functions of his job from April 2010 to January 2012, the time period during which he underwent his surgeries. *See id.* [D.E. 48 at 42].

While Plaintiff does not address his physician's September 26, 2009 report stating that he is prevented from returning to work from September 26, 2009 through October 26, 2009, Plaintiff contends that the fact that he was able to shred documents for eight hours a day while on "light duty" proves or at a minimum presents disputed issues of fact as to whether he could perform the physical duties required of a P&C Technician which were far less strenuous. *See* Pl.'s Resp. Br. [D.E. 52 at 20]. Further, Plaintiff argues that the pursuit of disability benefits does not automatically preclude the recipient from pursuing an ADA claim nor erect a strong presumption against the recipient's success on an ADA claim. *See id.* [D.E. 52 at 21]. Rather, Plaintiff contends that in order to survive summary judgment, Plaintiff must offer an explanation for the apparently inconsistent statements. *See id.* [D.E. 52 at 21]. Plaintiff contends that he was able to perform his job duties with the reasonable accommodation of wearing the wrist splints prescribed by his doctor whereas the disability application merely asserts that he was "unable to perform essential functions of job" with no additional factual assertions. *See id.* [D.E. 52 at 21]. Second, Plaintiff contends that he applied for the disability benefits because Defendant's Human Resource Department instructed him to do

10

so. *See id.* [D.E. 52 at 21-22]. In addition, Plaintiff contends that because Defendant reassigned Plaintiff's work vehicle due to the fact that Plaintiff was allegedly unable to perform his regular job duties, it is undisputed that Plaintiff "was replaced by a different, non-disabled employee." *See id.* [D.E. 52 at 22].

Defendant argues in its reply that Plaintiff cannot simply ignore the apparent contradiction that arises in stating that he was unable to perform the essential functions of his job, receive the associated benefits, and then sue under the ADA. *See* Def.'s Reply [D.E. 54 at 15-16]. Defendant contends that in order to defeat summary judgment, Plaintiff's explanation must be sufficient to warrant a reasonable juror to conclude that he was disabled and unable to work but could nevertheless perform his job with a reasonable accommodation. *See id.* [D.E. 54 at 16]; *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999). Further, Defendant contends that while Dr. Dodge initially imposed lifting restrictions and required Plaintiff to wear wrist splints at work, in his subsequent evaluations on April 15, August 27, September 17, and September 29, 2009, Plaintiff was prohibited from any grasping, squeezing, wrist flex or extension, with or without wrist splints. *See* Def.'s Reply [D.E. 54 at 17]. Defendant contends that Plaintiff provides no evidence other than his conclusory statements, which are directly contradicted by his physician's diagnosis, that wearing wrist splints would have permitted him to perform the essential functions of his job. *See id.* [D.E. 54 at 17-18]. Moreover, Defendant contends that it only asked Plaintiff to shred documents which were brought to him in an air-conditioned room because Defendant determined that this task did not cause the potential stress on Plaintiff's wrists that the constant flexing and grasping of the joysticks in the infrared camera operation required and that no one told Plaintiff to move file cabinets or stack bags of shredded paper. *See id.* [D.E. 54 at 20 & n.30]. Defendant also contends that

11

Plaintiff's company vehicle being reassigned (because he could no longer perform infrared thermography and because he reported to his supervisor that his legs were going numb while driving which posed a potential safety risk) is not competent evidence that Plaintiff's job was replaced by someone else. *See id.* [D.E. 54 at 19]; Def.'s Br. [D.E. 48 at 21]. Defendant contends that the deposition testimony of Randy Efflandt actually establishes that the vehicle was assigned to an existing Oncor employee. *See* Def.'s Reply [D.E. 54 at 19 n.29]. Further, Defendant contends that at no time during Plaintiff's salary continuation period did he request any accommodation from Defendant, including extending the salary continuation period or otherwise, that would have permitted Plaintiff to remain employed at Defendant's company. *See id.* [D.E. 54 at 17].

Plaintiff's argument that "it is undisputed that [Plaintiff] was replaced by a different, non-disabled employee" because Defendant reassigned his work vehicle makes an unwarranted leap in logic. *See* Pl.'s Resp. Br. [D.E. 52 at 22]. As Defendant points out, the mere fact that Plaintiff's vehicle was reassigned does not mean that Plaintiff was replaced by anyone. Plaintiff next cites an Eighth Circuit case in support of his position that his evidence of pretext also satisfies the "inference-of-discrimination element of the *prima facie* case." *See id.* [D.E. 52 at 22]. Plaintiff argues that the revision of the P&C Technician job descriptions after Plaintiff submitted his workers compensation claim for his back injury, the revised job descriptions not accurately describing the essential functions of Plaintiff's position, and the fact that the "light duty" projects required much more strenuous use of his hands and wrists than the normal job requirement of a P&C Technician show that Defendant's reasons for reassigning him to "light duty" and eventually terminating him were pretexual. *See id.* [D.E. 52 at 24-25].

As Defendant points out, Plaintiff's argument that Defendant revised the P&C Technician

12

job description to discriminate against him for his carpal tunnel syndrome after Plaintiff submitted

his workers compensation claim for his back injury does not make sense. *See* Def.'s Reply [D.E. 54

at 18-19]. At the time Defendant created the EFA for Plaintiff's position, Defendant did not know

that Plaintiff was going to be diagnosed with carpal tunnel syndrome three months later so that

Defendant could include physical restrictions for hands and wrists that Defendant can subsequently

use to discriminate against Plaintiff. In addition, the new job description was created by moving over

the old job description for P&C Technicians. *See* Def. Ex. [D.E. 49-21 at 6]. Furthermore, even if

the revised P&C Technician job description does not accurately describe the essential functions of

Plaintiff's position and the "light duty" projects ended up being more strenuous on Plaintiff's hands

and wrists than his regular duties, these facts do not demonstrate that Defendant's acts in reassigning

him to "light duty" and terminating him were pretexual when Defendant placed Plaintiff on restricted

duty pursuant to Plaintiff's physician's advice and Plaintiff's physician determined that Plaintiff

could not return to work at the time Plaintiff exhausted his allowable salary continuation. Because

Plaintiff failed to point to evidence showing that he was replaced by or treated less favorably than

non-disabled employees, summary judgment should be granted on his ADA disparate treatment

claim.

To the extent Plaintiff is attempting to argue that Defendant failed to provide reasonable

accommodations by not allowing him to perform his regular work duties with the wrist supports, it

is unreasonable for Plaintiff to expect Defendant to permit him to perform his regular duties with the

wrist splint when Plaintiff's physician did not permit him to do so. While Plaintiff contends that a

physician determined that he could perform his duties with the assistance of a wrist splint in April

of 2009, multiple subsequent physician assessments did not permit him to do so. Plaintiff does not

address Dr. Dodge's subsequent assessments determining that Plaintiff could not perform the essential duties of his job and eventually could not return to work until after he recovered from his carpal tunnel surgery. It would have been unreasonable for Defendant to permit Plaintiff to return to his normal job duties with the use of a wrist splint based on Plaintiff's opinion that he could do so when a doctor had advised Plaintiff not to do so. Furthermore, while Plaintiff contends that he was perfectly capable of operating the remote controls for the camera without pain or discomfort using the wrist splints, there could be many other reasons other than pain management as to why the doctor advised Plaintiff not to resume his normal work duties, such as further exacerbation of his injury prior to surgery. In fact, Plaintiff alleges that the light duty work caused further damage to his hands and wrists and that is why he required more extensive surgery. *See* Def. Ex. [D.E. 49-19 at 27]. Therefore, just because Plaintiff did not experience pain while using the wrist splints does not mean it would be medically advisable to do so.

Because Plaintiff failed to demonstrate that there is genuine dispute of fact as to his disparate treatment claim under the ADA, this claim should be dismissed. *See Little*, 37 F.3d at 1075 ("summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" (quoting *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993)).

### III. Count Two - Retaliation in Violation of Title VII and ADA

In order to establish a *prima facie* case of retaliation under the ADA or Title VII, a plaintiff must demonstrate that: (1) he participated in an activity protected under statute; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action. *Feist v. Louisiana Dep't of Justice*, 730 F.3d

14

450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)). If the employee establishes the *prima facie* case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. *Feist*, 730 F.3d at 454. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is a pretext for retaliation, which the employee does by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive. *Feist*, 730 F.3d at 454. In order to avoid summary judgment, the plaintiff must show that there is a conflict in substantial evidence on the question of whether the employer would not have taken its action "but for" Plaintiff's protected activity. *Feist*, 730 F.3d at 454.

Defendant argues that Plaintiff cannot make a *prima facie* showing that his termination was retaliatory because there is no "close temporal proximity" and because to the extent Plaintiff contends that Defendant retaliated against him by taking away his company vehicle or changing work assignments, such purported retaliatory behavior cannot be considered adverse employment action. *See* Def.'s Br. [D.E. 48 at 47-48]. Plaintiff contends that he suffered adverse employment actions when (1) Defendant placed him on restricted duty/salary continuation in March of 2009 despite his protests that he was able to perform his regular job duties and forced him to shred documents in an un-air conditioned room during the hottest months of summer in 2009; (2) Defendant terminated his employment on September 30, 2009; and (3) Defendant refused to allow him to return to work after his carpal tunnel surgery, despite prior promises to the contrary. *See* Pl.'s Resp. Br. [D.E. 52 at 27]. Further, Plaintiff contends that a genuine issue of fact exists as to a causal link between Plaintiff's protected activities and Defendant's adverse employment actions because soon after his complaints of discrimination in July, September, and October of 2008, and his report of an on-the-job back

15

strain injury on September 16, 2008, Defendant revised the job descriptions for Plaintiff's position to include a host of suspicious "physical requirements." *See id.* [D.E. 52 at 27-28]. Plaintiff contends that the new requirements appear tailored to make it difficult for someone with a recent back injury to meet the requirements listed and Plaintiff's and his supervisors' deposition testimonies show that the new requirements have little, if anything to do with the actual work performed by a P&C Technician. *See id.* [D.E. 52 at 28]. When Plaintiff reported his next injury, a carpal tunnel wrist injury in March of 2009, Plaintiff contends that his supervisors saw it as an opportunity to use the new "physical requirements" to get rid of an employee who complained too much about discrimination and injuries. *See id.* [D.E. 52 at 28]. Plaintiff contends that Defendant placed him on restricted duty and salary continuation and then only had to wait six months to fire him, using the alleged failure to meet the trumped up physical requirements as an excuse. *See id.* [D.E. 52 at 28].

"A plaintiff alleging retaliation may satisfy the causal connection element by showing close timing between an employee's protected activity and an adverse action against him. . . . Such temporal proximity must generally be very close." *Feist*, 730 F.3d at 454 (citing *McCoy*, 492 F.3d at 562; *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)) (internal quotations omitted). The Fifth Circuit "has found, for example, that a time lapse of up to four months may be sufficiently close . . . while a five month lapse is not close enough without other evidence of retaliation . . . . Such evidence may include an employment record that does not support dismissal, or an employer's departure from typical policies and procedures." *Feist*, 730 F.3d at 454 (citations and internal quotations omitted). Here, the alleged protected act Plaintiff points to that is closest in time to the alleged retaliatory act of putting him on restricted duty and salary continuation in March of 2009 are complaints in a string of e-mails between Plaintiff and Defendant's human resources

personnel in September and October of 2008 wherein Plaintiff mentions that there have been discrimination issues and states that he does not agree with Larry Garrett asking him for personal medical information while not making the same request from his co-workers. Pl.'s Resp. Br. [D.E. 52 at 26].

Other than the elaborate scheme allegedly concocted by Defendant to create trumped up job descriptions in December of 2008 which would enable Defendant to terminate Plaintiff based on his carpal tunnel syndrome in September of 2009 (even though Plaintiff's carpal tunnel syndrome was not known to Defendant at the time the job descriptions were devised because Plaintiff did not report his carpal tunnel diagnosis to Defendant until March of 2009 and Plaintiff does not dispute Randy Efflandt's deposition testimony that Defendant created the new EFA for the P&C Technician by moving over the old job description), Plaintiff does not point to evidence of retaliation sufficient to satisfy the causal connection element. Furthermore, Plaintiff's e-mail to Defendant's HR personnel is not sufficiently specific for the Court to even determine whether Plaintiff is alleging discrimination due to his disability or race. *See Harris-Childs v. Medco Health Solutions, Inc.*, 169 Fed. App'x 913, 916 (5th Cir. 2006) (affirming summary judgment on retaliation claim where plaintiff never "specifically complained of racial or sexual harassment, only harassment"); *Moore v. United Parcel Serv., Inc.*, 150 Fed. App'x 315, 319 (5th Cir. 2005) ("Moore . . . was not engaged in a protected activity, as his grievance did not oppose or protest racial discrimination or any other unlawful employment practice under Title VII."); *Evans v. Dep't of Transp.*, 547 F. Supp. 2d 626, 654 (E.D. Tex. 2007) ("Plaintiff has not shown that she engaged in a statutorily protected activity. Specifically, although Evans complained of a purportedly hostile work environment, at no time did she suggest that [the conduct at issue] was related to Evan's race, sex, . . . or other characteristic protected by

17

Title VII.").

In any event, even if Plaintiff were to demonstrate a *prima facie* case of retaliation under Title VII and the ADA, Plaintiff's claims would fail because Plaintiff cannot demonstrate that Defendant would not have taken action "but for" the protected activity. That is, no reasonable fact finder would conclude that Plaintiff would not have been put on restricted duty but for his vague complaints about discrimination when Defendant did so pursuant to Plaintiff's physician's determination that Plaintiff could not perform his regular job duties and that Plaintiff could not return to work at the time Plaintiff exhausted his salary continuation. Furthermore, the acts in terminating Plaintiff almost a year after the vague e-mail complaints and not permitting Plaintiff to return to work after he completed his carpal tunnel surgeries several years later do not satisfy the temporal proximity requirement nor meet the "but for" test given Plaintiff's doctor's assessments and the fact that it took years for Plaintiff to complete his carpal tunnel surgeries. As Defendant argues, while it may have been reasonable for Plaintiff to expect Defendant to honor its representation to permit him to return to his position if he would have had his surgery and recovered within a reasonable time after his termination, Plaintiff completed his surgeries 28 months after his termination. *See* Def.'s Reply [D.E. 54 at 16-17].

## IV. <u>Count Three - Race Discrimination Pursuant to 42 U.S.C. § 1981</u>

The summary judgment test for a race discrimination claim under Section 1981 is the same as the test for discrimination claims under Title VII. *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002) (citing *Pratt v. City of Houston*, 247 F.3d 601, 605 n.1 (5th Cir. 2001)). A plaintiff must first present a *prima facie* case of race discrimination under Section 1981 and if such is established, an inference of discrimination is raised. *See Patel*, 298 F.3d at 342. The

18

burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. *See id.* The inference disappears if the defendant is able to present such a reason. *See id.* The plaintiff then must offer evidence that the proffered reason is a pretext for racial discrimination. *See id.*

Defendant contends that Plaintiff failed to establish a *prima facie* case of race discrimination under Section 1981 because he has no competent evidence showing that (1) he was treated differently than his Caucasian co-workers similarly situated with him with regard to raises or training opportunities; (2) similarly situated Caucasian employees were not required to submit a list of the medications they were taking; and (3) a situation in which a Caucasian employee, similarly situated to Plaintiff, exhausted his salary continuation period after being unable to perform the essential functions of his job and was permitted to return to that job after being on long term disability for more than 6 months. *See* Def.'s Br. [D.E. 48 at 35]. Defendant contends that while Plaintiff alleges that he was discriminated against on the basis of race, he does not give any specific examples of how he was objectively treated differently than other employees. *See id.* [D.E. 48 at 36]. Plaintiff does not address Defendant's argument that Plaintiff failed to show a prima *facie case* of race discrimination under Section 1981. In fact, Plaintiff does not discuss Section 1981 at all in his response. It is Plaintiff's duty, not the Court's to specify which evidence supports his Section 1981 claim. *See Christensen*, 2011 WL 7070568, at *2. Therefore, Plaintiff's race discrimination claim under Section 1981 should be dismissed.

## RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that the Court **GRANT** Defendant's Motion for Summary Judgment [D.E. 50].

**SO RECOMMENDED**, this 18 day of August, 2014.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).